FILED

NEIL S. LERNER (SBN 134031)
JOLENE R. RICE (SBN 237180)
SANDS LERNER
12400 Wilshire Boulevard, Suite 1300
Los Angeles, California 90025
Telephone (310) 979-9144
Facsimile  (310) 979-9244
E-mail    nsl@sandslerner.com
          jrr@sandslerner.com

10 JUN -9  PM 3: 08

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

Attorneys for Plaintiff,
MARKEL AMERICAN INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MARKEL AMERICAN INSURANCE
COMPANY,

          Plaintiff,

    vs.

TEODORO NGUEMA OBIANG
MANGUE,

          Defendant.

Case No. **CV 10  4261- RSWL (EX)**

IN ADMIRALTY

COMPLAINT FOR DECLARATORY
RELIEF: MARINE INSURANCE
POLICY

Plaintiff, MARKEL AMERICAN INSURANCE COMPANY ("MARKEL"), by and through its attorneys, for its Complaint for Declaratory Relief, alleges on information and belief a cause of action for injunctive and declaratory relief as follows:

## JURISDICTION AND VENUE

1.    This is an action for declaratory relief regarding a marine insurance policy. It is an admiralty and maritime claim within the meaning of Rule 9(h) of The Federal Rules of Civil Procedure and falls within the admiralty and maritime jurisdiction of this Court, pursuant to 28 U.S.C. §1333(1).

1

2.    This action seeks declaratory relief under 28 U.S.C. §2201 *et. seq.*, as a present controversy exists between the parties hereto and for which MARKEL asks this Court to adjudicate and determine the rights of the parties to a contract of marine insurance.

3.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) as this cause arises out of a policy of marine insurance originally delivered by MARKEL to the named insured therein, Defendant, TEODORO NGUEMA OBIANG MANGUE ("DEFENDANT"), residing at 3620 Sweetwater Mesa Road, Malibu, California 90265.

4.    MARKEL is a corporation organized and existing under the laws of the State of Virginia with its principal place of business in Waukesha, Wisconsin. MARKEL is licensed to do business in the State of California, and in this judicial district, as an insurer of marine risks.

5.    MARKEL is informed and believes, and thereon alleges, that DEFENDANT is an individual residing at 3620 Sweetwater Mesa Road, Malibu, California 90265.

## GENERAL ALLEGATIONS

6.    On or about January 28, 2008, MARKEL, in exchange for good consideration, agreed to issue a policy of marine insurance, policy number MHP 16262 ("the Policy") to the DEFENDANT, affording Hull & Machinery coverage in the amount of $750,000.00 on a 2006 Nor-Tech 50' Super Cat vessel bearing Hull Identification Number AOV490118A606 (hereinafter "VESSEL"), which was owned by DEFENDANT.   The Policy covered the VESSEL for a period of one year, commencing on January 28, 2008 ending on January 28, 2009.   The named insured on the Policy was DEFENDANT and the insurer was MARKEL.

7.    On November 20, 2008, DEFENDANT executed a memorandum which listed some of the Policy's restrictions, indicating his understanding of those restrictions.   Among the restrictions listed was that the VESSEL was not to be left unattended for periods of time greater than twelve (12) hours and that the VESSEL was

SANDS LERNER
12400 WILSHIRE BOULEVARD, SUITE 1300
LOS ANGELES, CALIFORNIA 90025
TELEPHONE 310-979-9144

COMPLAINT FOR DECLARATORY RELIEF: MARINE INSURANCE POLICY

1   never to be kept on a mooring.  A true and correct copy of the memorandum is attached

2   hereto as Exhibit "A" and incorporated by reference herein.

3       8.    On or about January 28, 2009, MARKEL, in exchange for good

4   consideration, agreed to renew the Policy for a period of one year, commencing on

5   January 28, 2009 and ending on January 28, 2010.  True and correct copies of the

6   Declarations Page, Policy, and Endorsements to the renewed policy are attached hereto

7   as Exhibit "B" and incorporated herein by reference.

8       9.    The agreed upon home-port of the VESSEL, pursuant to the Policy, was

9   Pompano Beach, Florida.  The annual premium during the Policy's effective dates for

10   the amount, type, and period of coverage that MARKEL provided DEFENDANT was

11   $56,917.54.

12       10.    The Policy included a navigation limits warranty, under General

13   Conditions 2b, which stated that the Policy applied only to losses which occurred while

14   the VESSEL was afloat within the "Navigation Limits" shown on the Declarations

15   Page. The Navigation Limits shown on the Declarations Page were the "U.S. Atlantic

16   and Gulf of Mexico off-shore up to 25 miles and inland waters between Jacksonville,

17   Florida and Pensacola, Florida."

18       11.    An Ultra High Performance Endorsement ("UHP Endorsement") amended

19   the navigation limits warranty by adding the following restriction: The VESSEL was

20   not to be transported outside of the Continental United States.  In addition, the UHP

21   Endorsement stated that "Coverage is not provided anytime the [VESSEL] is being

22   transported as waterborne cargo."

23       12.    The Policy also included a named operator warranty under General

24   Conditions 1c, which required that only **named operator(s)**...be at the helm, solely in

25   control, and exclusively operating all aspects of steering and throttle of the [VESSEL]."

26   (emphasis in original).  The Policy defines named operator as "the 'Named Operator'

27   whom [MARKEL] have approved and listed on the Declarations Page."  The approved

28

SANDS LERNER
12400 WILSHIRE BOULEVARD, SUITE 1300
LOS ANGELES, CALIFORNIA 90025
TELEPHONE 310-979-9144

COMPLAINT FOR DECLARATORY RELIEF: MARINE INSURANCE POLICY

1  named operators are identified on the Declarations Page as Brad Schoenwald, Andrew

2  Howard, and Ron McClean.

3      13. The policy also provided that following a claimed loss, General Conditions

4  13b required DEFENDANT submit to an examination under oath ("EUO") as often as

5  reasonably required by MARKEL.

6      14. On or about October 15, 2009, the VESSEL was partially submerged off

7  the coast of Kihei, Hawaii in Maui County (hereafter referred to as "the incident"),

8  while attached to a mooring ball, which resulted in said VESSEL sustaining loss or

9  damage.

10      15. Following the incident, DEFENDANT submitted an insurance claim to

11  MARKEL for the loss or damage caused to the VESSEL as a result of the incident.

12  Claim number 09C2467 was assigned to the claim, after which MARKEL caused an

13  investigation to be conducted into the facts and circumstances pertaining to the

14  incident, subject to a reservation of rights. A Reservation of Rights Letter was

15  provided to DEFENDANT on October 16, 2009. A true and correct copy of the

16  Reservation of Rights Letter is attached hereto as Exhibit "C" and incorporated herein

17  by reference.

18      16. During its investigation, MARKEL repeatedly requested DEFENDANT

19  submit to an EUO as required under the Policy. DEFENDANT has refused and/or

20  failed to submit to such an examination.

21      17. Through its investigation, MARKEL learned that DEFENDANT had the

22  VESSEL transported as waterborne cargo outside the Continental United States to

23  Honolulu, Hawaii aboard a Matson Line ship, and that the VESSEL arrived in

24  Honolulu on or about September 4, 2009. MARKEL is informed and believes, and on

25  that basis alleges, that the VESSEL sustained loss or damage during its carriage as

26  waterborne cargo and that such loss or damage caused and/or contributed to the

27  submersion of the VESSEL.

28  ///

SANDS LERNER
12400 WILSHIRE BOULEVARD, SUITE 1300
LOS ANGELES, CALIFORNIA 90025
TELEPHONE 310-979-9144

COMPLAINT FOR DECLARATORY RELIEF: MARINE INSURANCE POLICY

18.   MARKEL also learned, during its investigation, that at the time of the incident, the VESSEL was not under the operation of a named operator, but was, in fact, operated by DEFENDANT as well as another individual unknown to and, accordingly, unapproved by MARKEL. MARKEL additionally learned that at the time of the incident, the VESSEL was being operated outside the navigation limits set by the Policy.

19.   MARKEL further learned during its investigation that at or around the time of the incident, DEFENDANT had arranged for the VESSEL to be kept on a mooring ball off the shore of Kihei, Hawaii for a period of time to include, at least, overnight.

20.   The navigation limits and named operator warranties were material to the risk because, *inter alia*, they permitted MARKEL to limit and define the risk, they allowed MARKEL to assess the risk and assign an appropriate premium, and because they allowed MARKEL to underwrite upon what waters the VESSEL will be navigated and by whom the VESSEL will be operated.

21.   On or about June 8, 2010, MARKEL denied coverage for the loss or damage alleged to have been sustained by the VESSEL as a result of the incident on the basis that there is no coverage under the Policy as a result of DEFENDANT'S refusal and/or failure to submit to an EUO, which is a <u>condition precedent</u> to coverage, as a result of DEFENDANT'S breach of the navigation limits and operator warranties, on the basis that the incident was the result of the loss or damage sustained by the VESSEL during its waterborne carriage, and as a result of DEFENDANT keeping the VESSEL unattended on a mooring ball. A true and correct copy of the letter denying Policy benefits is attached hereto as Exhibit "D" and incorporated herein by reference.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief – No Coverage for Failure to Submit to an EUO)

22.   MARKEL refers to and incorporates by reference the allegations from paragraphs 1 through 21 above, as though fully set forth herein.

SANDS LERNER
12450 WILSHIRE BOULEVARD, SUITE 1300
LOS ANGELES, CALIFORNIA 90025
TELEPHONE 310.979.4044

23.     The Policy, under GENERAL CONDITIONS 13b, requires that following a claimed loss, DEFENDANT "…as often as [MARKEL] may reasonably require…submit and subscribe to [EUO] by any person named by [MARKEL]."

24.     After submitting a claim to MARKEL for the alleged loss or damage to the VESSEL, DEFENDANT repeatedly failed and/or refused to submit to an EUO as required of him under GENERAL CONDITIONS 13b.  In doing so, DEFENDANT breached that provision of the Policy, failed to fulfill a condition precedent to any recovery of benefits under the Policy, and failed to fulfill a condition precedent to filing a lawsuit or counter-claim against MARKEL.

25.     As a result of DEFENDANT'S breach of the provision set forth in the Policy, coverage under the Policy was suspended during the incident and/or the Policy does not afford coverage to the DEFENDANT for the incident.

26.     Notwithstanding DEFENDANT'S breach of said provision in the Policy and, accordingly, the lack of coverage, DEFENDANT has made demand upon MARKEL for payment of the alleged loss or damage to the VESSEL.

27.     As a result of DEFENDANT'S demand for payment, MARKEL has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the Policy.  Until such time as MARKEL is able to have its rights and responsibilities under the Policy construed by the Court, MARKEL will suffer uncertainty with respect to its responsibilities and obligations under the Policy.

28.     DEFENDANT'S demand for payment under the Policy, as described herein, creates a real and justiciable issue with respect to the existence of valuable rights under the terms of the Policy, and a bona fide actual and present dispute exists calling for this Court's Declaratory Judgment.

29.     An actual controversy exists between MARKEL and DEFENDANT in that MARKEL contends for the reasons set forth herein that the Policy does not provide coverage for the loss or damage sustained by the VESSEL on or about October 15, 2009, because of DEFENDANT'S failure and/or refusal to submit to an EUO, whereas

SANDS LERNER
12400 WILSHIRE BOULEVARD, SUITE 1300
LOS ANGELES, CALIFORNIA 90025
TELEPHONE 310-979-9144

COMPLAINT FOR DECLARATORY RELIEF: MARINE INSURANCE POLICY

1    DEFENDANT claims that is does.  MARKEL, therefore, desires and requests a judicial

2    determination as to the rights, duties, and obligations of each party under the Policy

3    with respect of this issue.

4        30.    No adequate and/or expeditious remedy other than such Declaration exists

5    by which the rights of the parties hereto may be determined.

6                          **SECOND CLAIM FOR RELIEF**

7    **(Declaratory Relief – No Coverage for Breach of Navigational Limits Warranty)**

8        31.    MARKEL refers to and incorporates by reference the allegations from

9    paragraphs 1 through 30 above, as though fully set forth herein.

10       32.    The Policy states in pertinent part under the GENERAL CONDITIONS:

11           1.    Use of the [VESSEL]
                   If you violate any of the following conditions, coverage will
12                 be suspended until you are no longer in violation:

13                                    ******

14           2.    Policy Period/Territory
                   This policy applies only to loss which occurs during the policy
15                 period shown on the Declarations Page and:
             b.    while the [VESSEL] is afloat within the 'Navigation Limits'
16                 shown on the Declarations Page.

17       33.    The ULTRA HIGH PERFORMANCE ENDORSEMENT to the Policy

18   adds the following restriction to the GENERAL CONDITIONS:

19           ULTRA HIGH PERFORMANCE ENDORSEMENT
             GENERAL CONDITIONS, 1. Use of the [VESSEL], item b. is deleted
20           in its entirety and replaced with the following restriction on the use of
             the [VESSEL]:
21           b.    The [VESSEL] may not be transported outside of the Continental
                   United States.

22       34.    At the time of the incident, DEFENDANT had the VESSEL transported

23   outside the Continental United States and operated outside her navigational limits of

24   the "U.S. Atlantic and Gulf of Mexico off-shore up to 25 miles and inland waters

25   between Jacksonville, Florida and Pensacola, Florida."  DEFENDANT transported the

SANDS LERNER
12400 WILSHIRE BOULEVARD, SUITE 1300
LOS ANGELES, CALIFORNIA 90025
TELEPHONE: 310-979-3144

7

1   VESSEL to Hawaii and operated her in the U.S. Pacific Ocean of the coast of Kihei,

2   Hawaii in violation of GENERAL CONDITIONS 1b, as amended by the ULTRA

3   HIGH PERFORMANCE ENDORSEMENT, and 2b.   In doing so, DEFENDANT

4   breached the navigational limits warranty of the Policy.

5         35.   As a result of DEFENDANT'S breaches of the provisions set forth in the

6   Policy, coverage under the Policy was suspended during the incident and/or the Policy

7   does not afford coverage to the DEFENDANT for the incident.

8         36.   Notwithstanding DEFENDANT'S breach of said provisions in the Policy

9   and, accordingly, the lack of coverage, DEFENDANT has made demand upon

10  MARKEL for payment of the alleged loss or damage to the VESSEL.

11        37.   As a result of DEFENDANT'S demand for payment, MARKEL has

12  sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the

13  coverage afforded under the Policy.   Until such time as MARKEL is able to have its

14  rights and responsibilities under the Policy construed by the Court, MARKEL will

15  suffer uncertainty with respect to its responsibilities and obligations under the Policy.

16        38.   DEFENDANT'S demand for payment under the Policy, as described

17  herein, creates a real and justiciable issue with respect to the existence of valuable

18  rights under the terms of the Policy, and a bona fide actual and present dispute exists

19  calling for this Court's Declaratory Judgment.

20        39.   An actual controversy exists between MARKEL and DEFENDANT in that

21  MARKEL contends for the reasons set forth herein that the Policy does not provide

22  coverage for the loss or damage sustained by the VESSEL on or about October 15,

23  2009, because of DEFENDANT'S breach of the navigational limits warranty, whereas

24  DEFENDANT claims that is does.   MARKEL, therefore, desires and requests a judicial

25  determination as to the rights, duties, and obligations of each party under the Policy

26  with respect of this issue.

27        40.   No adequate and/or expeditious remedy other than such Declaration exists

28  by which the rights of the parties hereto may be determined.

SANDS LERNER
12400 WILSHIRE BOULEVARD, SUITE 1300
LOS ANGELES, CALIFORNIA 90025
TELEPHONE: 310-979-4144

8

## THIRD CLAIM FOR RELIEF

**(Declaratory Relief – No Coverage for Breach of the Named Operator Warranty)**

41.     MARKEL refers to and incorporates by reference the allegations from paragraphs 1 through 40 above, as though fully set forth herein.

42.     The Policy states in pertinent part under the GENERAL CONDITIONS:

> 1.     Use of the [VESSEL]
> If you violate any of the following conditions, coverage will be suspended until you are no longer in violation:
>
> ******
>
> 1c.     The **named operator(s)** will be at the helm, solely in control, and exclusively operating all aspects of steering and throttle of the [VESSEL].

43.     At the time of the October 15, 2009 incident referred to herein, the VESSEL was not being operated by any of the named operators approved by MARKEL and listed on the Policy.  Instead, the VESSEL was operated by DEFENDANT and another individual who was unknown to and unapproved by MARKEL.  By operating and permitting the operation of the VESSEL by anyone other than a named operator, DEFENDANT breached the named operator warranty of the Policy.

44.     As a result of DEFENDANT'S breach of the provision set forth in the Policy, coverage under the Policy was suspended during the incident and/or the Policy does not afford coverage to the DEFENDANT for the incident.

45.     Notwithstanding DEFENDANT'S breach of said provision in the Policy and, accordingly, the lack of coverage, DEFENDANT has made demand upon MARKEL for payment of the alleged loss or damage to the VESSEL.

46.     As a result of DEFENDANT'S demand for payment, MARKEL has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the Policy.  Until such time as MARKEL is able to have its rights and responsibilities under the Policy construed by the Court, MARKEL will suffer uncertainty with respect to its responsibilities and obligations under the Policy.

9

SANDS LERNER
12060 WILSHIRE BOULEVARD, SUITE 1300
LOS ANGELES, CALIFORNIA 90025
TELEPHONE 310-979-9144

47. DEFENDANT'S demand for payment under the Policy, as described herein, creates a real and justiciable issue with respect to the existence of valuable rights under the terms of the Policy, and a bona fide actual and present dispute exists calling for this Court's Declaratory Judgment.

48. An actual controversy exists between MARKEL and DEFENDANT in that MARKEL contends for the reasons set forth herein that the Policy does not provide coverage for the loss or damage sustained by the VESSEL on or about October 15, 2009, because of DEFENDANT'S breach of the named operator warranty, whereas DEFENDANT claims that is does. MARKEL, therefore, desires and requests a judicial determination as to the rights, duties, and obligations of each party under the Policy with respect of this issue.

49. No adequate and/or expeditious remedy other than such Declaration exists by which the rights of the parties hereto may be determined.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief – No Coverage for Waterborne Carriage)

50. MARKEL refers to and incorporates by reference the allegations from paragraphs 1 through 49 above, as though fully set forth herein.

51. The Policy states in pertinent part under the GENERAL CONDITIONS:

> 1. Use of the [VESSEL]
>    If you violate any of the following conditions, coverage will be suspended until you are no longer in violation:

52. The ULTRA HIGH PERFORMANCE ENDORSEMENT to the Policy adds the following restriction to the GENERAL CONDITIONS:

> ULTRA HIGH PERFORMANCE ENDORSEMENT
> GENERAL CONDITIONS, 1. Use of the [VESSEL], item b. is deleted in its entirety and replaced with the following restriction on the use of the [VESSEL]:
> b.    …Coverage is not provided anytime the [VESSEL] is being transported as waterborne cargo.

SANDS LERNER
12400 WILSHIRE BOULEVARD, SUITE 1300
LOS ANGELES, CALIFORNIA 90025
TELEPHONE 310-979-9144

10

53.   DEFENDANT organized the transportation of the VESSEL as waterborne cargo aboard a Matson Line ship to Honolulu, Hawaii, which arrived in Honolulu on or about September 4, 2009.  Markel is informed and believes and that basis alleges that the VESSEL was damaged during its carriage as waterborne cargo and that the damage caused and/or contributed to the VESSEL'S partial submersion on October 15, 2009.

54.   As a result of DEFENDANT'S transportation of the VESSEL as waterborne cargo and the damage it suffered during the waterborne carriage, coverage under the Policy was suspended during the incident and/or the Policy does not afford coverage to the DEFENDANT for the incident.

55.   Notwithstanding the said provision in the Policy and, accordingly, the lack of coverage, DEFENDANT has made demand upon MARKEL for payment of the alleged loss or damage to the VESSEL.

56.   As a result of DEFENDANT'S demand for payment, MARKEL has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the Policy.  Until such time as MARKEL is able to have its rights and responsibilities under the Policy construed by the Court, MARKEL will suffer uncertainty with respect to its responsibilities and obligations under the Policy.

57.   DEFENDANT'S demand for payment under the Policy, as described herein, creates a real and justiciable issue with respect to the existence of valuable rights under the terms of the Policy, and a bona fide actual and present dispute exists calling for this Court's Declaratory Judgment.

58.   An actual controversy exists between MARKEL and DEFENDANT in that MARKEL contends for the reasons set forth herein that the Policy does not provide coverage for the loss or damage sustained by the VESSEL on or about October 15, 2009, because of DEFENDANT'S transportation of the VESSEL as waterborne cargo, as described herein, whereas DEFENDANT claims that is does.  MARKEL, therefore, desires and requests a judicial determination as to the rights, duties, and obligations of each party under the Policy with respect of this issue.

11

COMPLAINT FOR DECLARATORY RELIEF: MARINE INSURANCE POLICY

59.    No adequate and/or expeditious remedy other than such Declaration exists by which the rights of the parties hereto may be determined.

### FIFTH CLAIM FOR RELIEF

### (Declaratory Relief – No Coverage for Breach of Mooring Provision)

60.    MARKEL refers to and incorporates by reference the allegations from paragraphs 1 through 59 above, as though fully set forth herein.

61.    The Policy states in pertinent part under GENERAL CONDITIONS 1, that if DEFENDANT violates any of the listed conditions, coverage will be suspended until DEFENDANT is no longer in violation.

62.    The ULTRA HIGH PERFORMANCE ENDORSEMENT to the Policy adds the following amendment to GENERAL CONDITIONS 1: "The [VESSEL] must not be left unattended while using a mooring buoy or anchor."

63.    On November 20, 2008, DEFENDANT executed a memorandum, acknowledging that he understood the Policy's restrictions on the use of the VESSEL, including that the VESSEL was not be left unattended for a period of time greater than twelve (12) hours and that the VESSEL was never to be kept on a mooring.

64.    Despite DEFENDANT'S November 20, 2008 acknowledgment, at or around the time of the incident, DEFENDANT arranged for the VESSEL to be kept unattended on a mooring ball of the coast of Kihei, Hawaii. MARKEL is informed and believes, and on that basis alleges, that at or around the time of the incident, the VESSEL was attached to the mooring ball for overnight storage in violation of GENERAL CONDITIONS 1, as amended by the ULTRA HIGH PERFORMANCE ENDORSEMENT.

65.    As a result of DEFENDANT'S violation of the mooring provision, coverage under the Policy was suspended during the incident and/or the Policy does not afford coverage to the DEFENDANT for the incident.

///

///

12

SANDS LERNER
12400 WILSHIRE BOULEVARD, SUITE 1300
LOS ANGELES, CALIFORNIA 90025
TELEPHONE: 310-979-4144

66. Notwithstanding DEFENDANT'S breach of said provision in the Policy and, accordingly, the lack of coverage, DEFENDANT has made demand upon MARKEL for payment of the alleged loss or damage to the VESSEL.

67. As a result of DEFENDANT'S demand for payment, MARKEL has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the Policy. Until such time as MARKEL is able to have its rights and responsibilities under the Policy construed by the Court, MARKEL will suffer uncertainty with respect to its responsibilities and obligations under the Policy.

68. DEFENDANT'S demand for payment under the Policy, as described herein, creates a real and justiciable issue with respect to the existence of valuable rights under the terms of the Policy, and a bona fide actual and present dispute exists calling for this Court's Declaratory Judgment.

69. An actual controversy exists between MARKEL and DEFENDANT in that MARKEL contends for the reasons set forth herein that the Policy does not provide coverage for the loss or damage sustained by the VESSEL on or about October 15, 2009, because of DEFENDANT'S violation of the mooring provision of the Policy, as described herein, whereas DEFENDANT claims that is does. MARKEL, therefore, desires and requests a judicial determination as to the rights, duties, and obligations of each party under the Policy with respect of this issue.

70. No adequate and/or expeditious remedy other than such Declaration exists by which the rights of the parties hereto may be determined.

WHEREFORE, MARKEL prays for Judgment from the Court:

1. Declaring as to the First Claim for Relief, that Policy Number MHP 16262 does not afford coverage to DEFENDANT for the incident of October 15, 2009; or that Policy Number MHP 16262 excludes and/or suspends coverage for the incident of October 15, 2009;

2. Declaring as to the Second Claim for Relief, that Policy Number MHP 16262 does not afford coverage to DEFENDANT for the incident of October 15, 2009;

SANDS LERNER
12400 WILSHIRE BOULEVARD, SUITE 1300
LOS ANGELES, CALIFORNIA 90025
TELEPHONE 310-979-9144

13

1   or that Policy Number MHP 16262 excludes and/or suspends coverage for the incident

2   of October 15, 2009;

3       3.    Declaring as to the Third Claim for Relief, that Policy Number MHP

4   16262 does not afford coverage to DEFENDANT for the incident of October 15, 2009;

5   or that Policy Number MHP 16262 excludes and/or suspends coverage for the incident

6   of October 15, 2009;

7       4.    Declaring as to the Fourth Claim for Relief, that Policy Number MHP

8   16262 does not afford coverage to DEFENDANT for the incident of October 15, 2009;

9   or that Policy Number MHP 16262 excludes and/or suspends coverage for the incident

10   of October 15, 2009;

11       5.    Declaring as to the Fifth Claim for Relief, that Policy Number MHP 16262

12   does not afford coverage to DEFENDANT for the incident of October 15, 2009; or that

13   Policy Number MHP 16262 excludes and/or suspends coverage for the incident of

14   October 15, 2009;

15       6.    That DEFENDANT be required to pay the costs incurred by MARKEL in

16   connection with this suit; and

17       7.    That the Court grant such other and further relief as the Court deems just

18   and proper.

19

20   DATED: June 8, 2010           SANDS LERNER

21

22              By:

23              NEIL S. LERNER

24              JOLENE R. RICE

25              Attorneys for Plaintiff,

26              MARKEL AMERICAN INSURANCE

27              COMPANY

28

*SANDS LERNER*
*12400 WILSHIRE BOULEVARD, SUITE 1300*
*LOS ANGELES, CALIFORNIA 90025*
*TELEPHONE 310-979-9144*

COMPLAINT FOR DECLARATORY RELIEF: MARINE INSURANCE POLICY

Exhibit A

Your **Markel American Ultra High Performance Policy** contains specific coverages and restrictions. The following is a brief overview of these.

1. This is a "Approved Named Operator Policy". All operators must be named on the application and approved by the Markel American.
2. All "Approved Named Operators" must wear a engine kill lanyard while operating the insured vessel.
3. All insured vessel occupants must wear a "U.S. Coast Guard Approved" flotation device while aboard the insured vessel.
4. No coverage for any and all alcohol related claims involving an "Approved Named Operator".
5. No coverage for any claims involving participation in any racing or speed trials.
6. Insured vessel must be kept in a locked and secure building while vessel is stored on a trailer.
7. A deductible of 20% of the hull value will apply to any and all theft losses while insured vessel is not in a locked and secured building.
8. Insured vessel can not be left unattended for a period of time greater then (12) hours while afloat and then only while tied to a pier in a secure marina.
9. Insured vessel must be kept in a covered slip on a lift capable of lifting it completely out of the water if left unattended for periods of time greater then (12) hours.
10. Insured vessel can not be kept on a mooring at any time.
11. Navigation is restricted to U.S. inland and coastal waters not to exceed 25 miles offshore.
12. Any transportation of the insured vessel must be performed on a trailer which is listed and insured on the same policy.
13. Any an all trailering of insured vessel is limited to 200 miles from the insured vessel's designated "Home Port" as shown on the policy unless prior authorization is given in writing by Markel American.
14. Any and all trailering of insured vessel must be performed with a tow vehicle who's rated towing capacity is greater then the insured vessel and trailer's combined total weight.
15. No coverage is afforded while the insured vessel is being transported by a common carrier or third party unless prior authorization is given in writing by Markel American.

The undersigned acknowledges that they have read and fully understand the coverage restrictions and information given above.

_____                    _11/28/2008_
Signature of Applicant                             Date

**EXHIBIT A**

p. 1

Exhibit B

# MARKEL AMERICAN INSURANCE COMPANY

## GLEN ALLEN, VIRGINIA

**MARKEL**

### WATERCRAFT DECLARATIONS PAGE

Page 2 of 2

| Policy Number: MHP00000016262 | Agency Number: 10213 - 000001 | Effective Date/Transaction: 01/28/2009    Endorse |
|---|---|---|

| Policy Period: From 01/28/2009    To   01/28/2010 | 12:01 A.M. Standard Time at Your Mailing Address |
|---|---|

| Insured Name and Mailing Address | Your Agent    8007592628 |
|---|---|
| TEODORO OBIANG<br>3620 SWEETWATER MESA RD<br>Malibu, CA 90265-4939 | ELTON PORTER MARINE INS AGENCY<br>1455 W LOOP SOUTH 9TH FLOOR<br>HOUSTON, TX 77027 |

**Unit Description:** 50 ' 2006 Nor-Tech SUPER CAT                    4600 HP    HIN: AOV490118A606

**Unit Mooring Location:** Pompano Beach, FL 33064

**Navigation Limits:** U.S. Atlantic and Gulf of Mexico off-shore up to 25 miles and inland waters between Jacksonville, FL and Pensacola, FL.

**Lay-Up:** None    **From:**    **To:**

**Named Operators:** BRAD SCHOENWALD, ANDREW HOWARD, RON MCCLEAN,

| COVERAGE | LIMIT | DEDUCTIBLE | PREMIUM |
|---|---|---|---|
| Watercraft & Equipment, Agreed Value | $750,000 | $75,000 | $25,326 |
| Personal Effects | $1,000 | $250 | incl. |
| Trailer | $15,000 | $300 | $225 |
| Emergency Towing and Assist | $750 | $0 | incl. |
| Watercraft Liability | $500,000 | $0 | $2,594 |
| Oil Pollution Liability | $300,000 | $0 | incl. |
| Medical Payments | $5,000 | $0 | $32 |
| Uninsured Watercraft | $500,000 | $0 | incl. |
| Florida Hurricane Fee | | | $563.54 |

| | |
|---|---|
| Endorsement Premium Total: | $0.00 |
| Unit Premium: | $28,177.00 |

| Minimum Earned Premium: $250.00 | Policy Taxes/Fees: $563.54 | TOTAL ANNUAL PREMIUM: | $56,917.54 |
|---|---|---|---|

**Miscellaneous**
Reprinted to Dec page to correct navigation on unit 2

**Loss Payee**

**Producer**    ELTON PORTER MARINE INSURANCE

**Forms and Endorsements:**    MHP5001-0108    MHP5009-0108    MHP5015-0108    MHP5021-0108

**Signed on:**    2009-10-16    at  HOUSTON, TX

MHP5000-0108                    Insured                    **EXHIBIT** B                    10/16/2009

ρ.1



Markel American Insurance Company

# SPECIMEN

# THE MARKEL HIGH PERFORMANCE POLICY

EXHIBIT ß

p. 2

TABLE OF CONTENTS

## THE MARKEL HIGH PERFORMANCE POLICY

### READ YOUR POLICY CAREFULLY.

**Beginning on Page**

INSURING AGREEMENT ................................................................................................ 1

DEFINITIONS ................................................................................................................ 1

GENERAL CONDITIONS .............................................................................................. 2

GENERAL EXCLUSIONS .............................................................................................. 5

PHYSICAL DAMAGE .................................................................................................... 6

WATERCRAFT LIABILITY .......................................................................................... 10

OIL POLLUTION LIABILITY ........................................................................................ 11

MEDICAL PAYMENTS ................................................................................................ 12

UNINSURED WATERCRAFT ...................................................................................... 13

SPECIMEN

## INSURING AGREEMENT

In return for the premium payment and compliance with all applicable provisions of this policy and any endorsements, we agree to provide the insurance coverages as shown on the Declarations Page, which is part of this policy.

By accepting this policy, you agree that the statements on the Declarations Page and any application are your agreements and representations. This policy is issued in reliance upon the truth of your representations during the application process and it includes all agreements existing between you and us or any of our representatives.

It is warranted that the **insured watercraft** is seaworthy at the inception of this insuring agreement. Violation of this warranty voids this insuring agreement from its inception.

## DEFINITIONS

Throughout this policy, most words and phrases that have special meanings appear in **bold**. Only the pronouns "we", "our", "us", "you", "your" and "yours" are defined, but do not appear in **bold**. This section defines some of the more general terms used in this policy. Bold terms that are not listed in this section are defined within the sections they appear.

1. You, your and yours refer to the 'Insured' named on the Declarations Page and your spouse if a **resident** of the same household.

2. The words we, us and our refer to the company, shown on the Declarations Page, which is providing this insurance.

3. **Actual cash value** means the cost to repair or replace the lost or damaged property less depreciation.

4. **Bodily injury** means physical injury, sickness or disease sustained by a person including death resulting from any of these.

5. **Constructive total loss** means that the cost to recover and/or repair the **insured watercraft** will exceed the applicable limit of insurance.

6. **Contaminant** means any petroleum product, chemical, lubricant, or solvent normally associated with the use and operation of a watercraft.

7. **Design defect** means a flaw in the structural plan of the **insured watercraft's** hull or machinery, or any of its components. Design defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, **latent defects**, or **manufacturer's defects**.

8. **Family member** means any person related to you by blood, marriage, or adoption (including a ward or foster child) who is also a **resident** of your household.

9. **Insured** means you and any **named operator**.

10. **Insured watercraft** means the watercraft and motor(s) shown on the Declarations Page, including machinery and equipment necessary for the safe operation and maintenance of the watercraft.

11. **Latent defect** means a flaw in the material of the **insured watercraft's** hull or machinery existing when the **insured watercraft** or its components were built and not discoverable by common means of testing. Latent defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, **manufacturer's defects**, or **design defects**.

EXHIBIT B

p.4

12. **Manufacturer's defect** means the improper, incorrect or inadequate manufacturing process of the **insured watercraft's** hull or machinery or any of its components. Manufacturer's defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, **latent defects**, or **design defects**.

13. **Named operator** means the 'Named Operator' whom we have approved and listed on the Declarations Page.

14. **Occurrence** means a single event or an accident or series of accidents caused by a single event.

15. **Property damage** means damage to tangible property.

16. **Resident** means any person who lives in your home.

17. **Windstorm** means tropical depressions, tropical storms, hurricanes, or nor'easters as designated by the National Weather Service and/or National Hurricane Center.

## GENERAL CONDITIONS

SPECIMEN

1. Use of the **Insured Watercraft**
   If you violate any of the following conditions, coverage will be suspended until you are no longer in violation:
   a. The **insured watercraft** is for private pleasure use only. Coverage is not provided for charter, hire, lease or any other commercial use. Recreational entertaining of the **insured's** business clients on the **insured watercraft** is not considered commercial use.
   b. The **insured watercraft** may not be transported outside of the Continental United States. While being towed overland on a trailer, the weight of the **insured watercraft**, trailer and any other equipment may not exceed the towing capacity as provided by the manufacturer of the towing vehicle. If the **insured watercraft** is being transported by contract or common carrier, the contract or common carrier must be licensed and must provide a certificate of insurance covering the **insured watercraft**. This policy is then excess to the coverage provided by the licensed contract or common carrier. Coverage is not provided anytime the **insured watercraft** is being transported as waterborne cargo.
   c. The **named operator(s)** will be at the helm, solely in control, and exclusively operating all aspects of steering and throttle of the **insured watercraft**.
   d. If 'Lay-Up' is shown on the Declarations Page, during the lay-up period shown:
      i. If the Declarations Page indicates that lay-up is ashore, then:
         1) the **insured watercraft** is warranted to be laid up, winterized, and out of commission ashore. An **insured watercraft** on a permanent lift or hoist will not be considered laid up ashore;
         2) the **insured watercraft** is warranted to not be available for immediate use;
         3) overland transport is limited to within 150 miles of mooring location for maintenance, servicing, repair and safety of the **insured watercraft** only.
      ii. If the Declarations Page indicates that lay-up is on a lift, then:
         1) the **insured watercraft** is warranted to be laid up, winterized, and out of commission on a lift or ashore;
         2) the **insured watercraft** is warranted to not be available for immediate use;
         3) overland transport is limited to within 150 miles of mooring location for maintenance, servicing, repair and safety of the **insured watercraft** only.

2. Policy Period/Territory
   This policy applies only to loss which occurs during the policy period as shown on the Declarations Page and:
   a. on land within the United States of America; or
   b. while the **insured watercraft** is afloat within the 'Navigation Limits' shown on the Declarations Page.

EXHIBIT B

p. 5

3.  Misrepresentation or Fraud
    All insurance provided by this policy will be null and void if you, at any time, either intentionally conceal or misrepresent any fact, regardless of materiality, or if you misrepresent or conceal any material fact regardless of intent. No action or inaction by us will be deemed a waiver of this provision.

4.  Notice of Cancellation
    You may cancel this policy by returning it to us or our authorized agent, or by advising us or our authorized agent in writing, stating the future date you want the policy to be cancelled.

    We may cancel this policy by delivering or mailing notice of cancellation to the first named 'Insured' at the last address shown in our records at least:
    a.  ten (10) days before the cancellation takes effect if:
        i.   the cancellation is for nonpayment of premium; or
        ii.  this policy has been in effect for less than sixty (60) days and is not a renewal policy.
    b.  thirty (30) days before the cancellation takes effect in all other cases.

    After this policy has been in effect for sixty (60) days, or if this is a renewal policy, we will cancel only:
    a.  for nonpayment of premium due;
    b.  for misrepresentation or fraud;
    c.  for substantial breach of your duties under this policy;
    d.  if the risk changed substantially since the policy was issued; or
    e.  for failure to comply with our underwriting requirements within 60 days of the term effective date.

    Proof of mailing of this notice to you will be sufficient proof that notice of cancellation was given. The date of the cancellation stated in the notice will become the end of the policy period.

    This policy will terminate without any written notice and all premiums will be deemed fully earned by us when we pay for a total loss or a **constructive total loss**.

5.  Return Premium
    If this policy is cancelled, you may be entitled to a premium refund. If we cancel the policy, any return premium will be computed on a pro-rata basis. If you cancel the policy, any return premium will be computed on a 90% pro-rata basis. The return premium cancellation is subject to our minimum earned premium. Any return premium will be paid to you within a reasonable amount of time after the cancellation.

6.  Conformity to Statute
    This policy is subject to established principles and precedents of federal admiralty law of the United States of America, but where no substantive principle or precedent is applicable state law shall apply. Any provision of this policy that conflicts with applicable law or regulation is hereby amended to conform to the minimum requirements of the law or regulation.

7.  Policy Changes
    No change or waiver may be effected in this policy except by endorsement issued by us. If a premium adjustment is necessary, we will make the adjustment as of the effective date of the change.

    When we broaden coverage during the policy period, without charge, the policy will automatically provide the broadened coverage when effective in your state.

8.  Legal Action Against Us
    a.  No suit or action may be brought against us unless there has been full compliance with all terms of this policy.

EXHIBIT 3

p. 6

   b.  With respect to coverage provided under **PHYSICAL DAMAGE**, no suit or action may be brought against us unless the action is brought within 12 months after the date you first have knowledge of the loss.

   c.  With respect to all other coverage under this policy, no suit or action may be brought against us until the amount of a claim against you has been determined or agreed upon.

   d.  Nothing in this policy gives any person or organization the right to join us as defendants in a suit brought against you.

9.  No Benefits to Others

No person or organization, which has custody of the **insured watercraft** and is to be paid for services, will benefit from this insurance.

10.  Transfer of Interest

We do not provide any coverage under this policy if you sell, assign, transfer or pledge the insured property unless prior written consent has been obtained from us.

In the event of your death, this policy will remain in effect until the end of the policy period for:

   a.  persons covered under this policy at the time of your death;

   b.  your legal representative while acting within the scope of duties of a legal representative; or

   c.  any person having proper custody of the **insured watercraft** until a legal representative is appointed.

11.  Right of Recovery

You may have the right to recover from another party who is responsible for your loss. If we pay your loss under this policy, this right of recovery will belong to us up to the amount that we have paid you. If you, or anyone acting on your behalf, take any action that impairs our right to recover, we may consider this policy void and without effect as to such loss. However, signing written contracts for storage or slip rental that include a waiver of subrogation provision will not void this policy.

12.  Claim or Suit Against You

You must immediately notify us and send us every demand notice, summons or other legal papers received by you or your representative if a claim is made or a suit is brought against you for liability that is covered under this policy. We will pay the ensuing cost of the suit and have the sole right to control the defense of the suit. We also have the option of naming attorneys to represent you in the suit.

13.  General Duties Following a Loss

You must report immediately to us or our authorized agent any accident, loss, damage, or expense which may be covered under this policy. This report should give full details about when and where the loss occurred, how it happened and the name and address of all the people involved including all witnesses. You are required to immediately notify the authorities of any collision, theft, vandalism or malicious damage to your insured property or if any injury is involved. You must also permit us to inspect any damage before repairs are made.

After requested by us, you must file within ninety (90) days thereof, with us or our authorized agent, a written statement about the details of the loss. This statement must be signed and sworn by you.

You, as often as we may reasonably require, will:

   a.  exhibit to any person we designate all that remains of any property that may be covered under this policy;

   b.  submit and subscribe to examinations under oath by any person named by us. If more than one person is examined, we have the right to examine and receive statements separately from each person and not in the presence of the others;

   c.  produce for examination and permit extracts and copies of all books of account, bills, invoices, other vouchers and any other tangible items related to the claimed loss, or certified copies thereof if the originals are lost, at such reasonable time and place as may be designated by us or our representative.

**EXHIBIT** 13

p. 7

You must cooperate with us in the investigation, defense or settlement of any loss.

If you do not comply with these general duties, no coverage for the loss will be provided.

14. Other Insurance
     This policy is excess over any other valid and collectible insurance.

15. Nonrenewal
     If we decide not to renew your policy, we or our authorized representative will mail to the first named 'Insured', at the address shown on the Declarations Page, written notice of nonrenewal. The written notice will be mailed to the first named 'Insured' at least thirty (30) days before the end of the policy term. A copy of the notice will also be sent to any lienholder named on the Declarations Page. If we decide not to renew your policy, our mailing of notice to the address of the first named 'Insured' shown on the Declarations Page will constitute proof of notice as of the date we mail it.

## SPECIMEN

### GENERAL EXCLUSIONS

No coverage is provided under this policy for loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of:

1. Extended Radioactive Contamination
    a. ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;
    b. the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;
    c. any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;
    d. the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purpose.

    However, if while the **insured watercraft** is within the policy territory, a fire arises directly or indirectly from one or more of the above causes in item a., b., and d., then any loss or damage arising directly from that fire will, subject to the provisions of this policy, be covered. No coverage is provided for any loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

2. War or any warlike operation. This includes declared and undeclared wars, civil wars, revolutions or any civil unrest.

3. The lawful or unlawful capture, seizure, requisition or detainment of your **insured watercraft** by a civil authority or any attempt at any of these.

4. An actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

5. Preparation for or participation in any race, speed, or stunting contest.

6. Willful or intentional misconduct or criminal act on the part of any **insured** or during any illegal activity on the part of any **insured**. This exclusion includes loss, damage, injury or liability occurring while an **insured**

EXHIBIT B

p.8

is operating the **insured watercraft** with a blood or breath alcohol level equal to or in excess of the legal limit applicable for the operation of motor vehicles in the state where you reside.

## PHYSICAL DAMAGE

1. Coverage

  a.  Watercraft and Equipment
     i.  Coverage
        We will cover sudden accidental direct physical loss or damage to the **insured watercraft**.

     ii.  Property Not Covered
        Under Watercraft and Equipment Coverage, we do not cover:
        1)  dock boxes, moorings, cradles, lifts, or shore stations;
        2)  items which are covered elsewhere under this policy; or
        3)  fuel.

     iii.  What We Pay
        1)  In the event of a total loss or constructive total loss at our option we will:
          a)  pay the limit on the Declarations Page for 'Watercraft and Equipment', less the applicable deductible; or
          b)  replace the lost property with property of like kind and quality, less the applicable deductible.
        2)  If the **insured watercraft** is less than seven years of age, then in the event of a partial loss, we will pay the lesser of:
          a)  the reasonable cost of repairs without deduction for depreciation; or
          b)  the cost to replace the lost or damaged property, with the lesser of:
            i)  new property of comparable material and quality, used for the same purpose; or
            ii)  property of like kind, condition, quality and age.

        However, the following items will be paid based upon **actual cash value**:
        a)  machinery inside the **insured watercraft** starting with the fourth year from the date of manufacture;
        b)  outdrive units and outboards;
        c)  batteries;
        d)  paint or finishes (including anti-fouling paint);
        e)  protective covers; upholstery, cushions, carpet or any fabric or canvas; or
        f)  loss due to **windstorm**.
        3)  If the **insured watercraft** is seven years of age or more, then all partial losses will be paid on an **actual cash value** basis.

        Age is calculated by subtracting the model year from the calendar year, and adding one to the result.

        We pay for repairs that are made in accordance with the manufacturer's specifications or accepted repair practices, including spot repair.

        If the **insured watercraft** was damaged before the loss, we will not pay to repair the prior damage. In the event of a total loss or **constructive total loss**, the amount we will pay will be reduced to the cost that would have been incurred had the prior damage been repaired.

**EXHIBIT** B

*p. 9*

iv. Exclusions

We will not pay for loss, damage or expense caused by or resulting from:

1) wear and tear, gradual deterioration, inherent vice, marring, electrolysis, corrosion, rust, dampness of atmosphere, weathering, osmosis, blistering, mold, mildew, wet or dry rot;

2) birds, vermin, insects, animals, and marine life; however if any of these results in fire, sinking, collision or stranding of the **insured watercraft**, the resulting physical damage will be covered;

3) mechanical or electrical breakdown or overheating unless such damage is the result of other loss covered by this policy;

4) failure to maintain the **insured watercraft** (including its machinery and equipment) in good condition so that the **insured watercraft** cannot be damaged by ordinary weather or water conditions or the rigors of normal use;

5) the operation of the **insured watercraft** if the horsepower exceeds the manufacturer's recommended safe powering limit;

6) ice and/or freezing;

7) diminution in value;

8) **windstorm** for any canvas; or

9) **manufacturer's defects** or **design defects**. However, if the loss or damage has not resulted from the negligence of any **insured**, this exclusion does not apply to loss, damage or expense directly caused by any **latent defect** in the hull or machinery (excluding the cost and expense of replacing or repairing the latently defective part).

b. Personal Effects

i. Coverage

We will cover sudden accidental direct physical loss to your personal effects, and those of your guests, while on board the **insured watercraft** or while being loaded on or unloaded from the **insured watercraft**. Personal effects are items such as sports equipment, clothing and other personal items.

ii. Property Not Covered

Under Personal Effects Coverage, we do not cover:

1) currency, documents or other valuable papers;

2) jewelry, watches or furs;

3) china or silver;

4) antiques or collectibles;

5) computer hardware or software;

6) perishables or consumables;

7) firearms;

8) animals;

9) watercraft including personal watercraft such as jet skis or wave runners;

10) property which is covered under Watercraft and Equipment Coverage;

11) dock boxes, moorings or cradles; or

12) fuel.

iii. What We Pay

We will pay the **actual cash value** of the personal effect(s). Our liability for any one **occurrence** will not exceed the limit for 'Personal Effects' on the Declarations Page.

iv. Exclusions

We will not pay for loss, damage or expense caused by or resulting from:

1) wear and tear, gradual deterioration, birds, insects, animals, or inherent vice;

2) mechanical or electrical breakdown, unless caused by lightning;

3) theft or unexplained disappearance unless there are visible marks of forcible entry or removal;

EXHIBIT 13

p. 10

    4) **windstorm**; or
    5) diminution in value.

c. Trailer
  i. Coverage
   We will cover sudden accidental direct physical loss or damage to your trailer, but only if used exclusively for transporting the **insured watercraft**.

  ii. What We Pay
   We will pay for the **actual cash value** of the trailer. Our liability for any one **occurrence** will not exceed the limit for the 'Trailer' on the Declarations Page.

  iii. Exclusions
   We will not pay for loss, damage or expense caused by or resulting from:
    1) wear and tear, gradual deterioration, or inherent vice;
    2) mechanical breakdown; or
    3) diminution in value.

d. Emergency Towing and Assistance
  i. Coverage
   We will reimburse the reasonable expenses you incur resulting from the following services to the **insured watercraft** if help is not available and you must obtain commercial assistance:
    1) towing to the nearest place where necessary repairs can be made;
    2) delivery of fuel, oil, parts or loaned battery (excluding the cost of the items themselves) or emergency labor, while away from a safe harbor.

   If 'Trailer' coverage is shown on the Declarations Page, this coverage also applies to such expenses incurred because the trailer is disabled. However, we will not pay for delivery of fuel to any conveyance transporting the **insured watercraft** if the reason the boat trailer is disabled is because the conveyance is out of fuel.

  ii. What We Pay
   The most we will pay for any one **occurrence** is the limit for 'Emergency Towing and Assistance' on the Declarations Page.

e. Windstorm Extra Expense
  i. Coverage
   If a premium is shown on the Declarations Page for 'Watercraft and Equipment' and if a **windstorm** watch or warning is issued for the area where your **insured watercraft** is moored, we will reimburse the costs that you incur:
    1) to protect the **insured watercraft** from loss or damage;
    2) within the twenty-four (24) hour period prior to the issuance of a watch or warning, provided that a watch or warning is subsequently issued for the area where your **insured watercraft** is moored;
    3) to have the **insured watercraft** professionally hauled out of the water at the time the watch or warning is issued for your mooring area and to have the **insured watercraft** launched after the watch or warning has ended.

  ii. What We Pay
   We will pay 50% of your actual incurred expenses, subject to a maximum of $500 for any one **windstorm**, and $1,000 total in any single policy period.

EXHIBIT B

p. 11

2. Loss Conditions

a. Deductibles

i. We will not pay for loss, damages or expense for any one **occurrence** until the amount of the loss, damage or expense exceeds the applicable deductible shown on the Declarations Page.

ii. The applicable deductible amount will be doubled for all theft losses, unless reasonable precautions were taken to prevent the theft. Reasonable precautions include evidence that an approved anti-theft device or precaution was defeated. We will not consider a lock to have been defeated if the thief found the key on board the **insured watercraft** or in the towing vehicle. Approved precautions include the following:

1) **insured watercraft** stored in a locked garage, building or fenced area;
2) **insured watercraft** stored in a fenced commercial marina;
3) equipment stored in a locked cabin or enclosure;
4) electronic alarms;
5) outboard or outdrive locks;
6) trailer ball or trailer axle locks;
7) propeller hub locks;
8) **insured watercraft** or equipment chained to a permanent anchor.

iii. However, if a Windstorm Deductible is shown on the Declarations Page, then the Windstorm Deductible will apply to all partial, total or **constructive total losses** caused by or resulting from **windstorm**.

iv. The policy deductible does not apply to the costs incurred under Windstorm Extra Expense.

b. Salvage and Abandonment

If we pay the limit as shown on the Declarations Page for 'Watercraft and Equipment' or 'Trailer', we reserve the right to take possession of the remains if we elect. At our request, you will transfer the title of the property to us or to a salvage buyer appointed by us. Any recovery or salvage on a loss will accrue entirely to our benefit until the sum paid by us has been made up.

We are not obligated to accept any property you abandon, nor are we obligated to pay any storage fees incurred because you abandoned any property to any other person or organization.

c. Payment of Loss

We will pay losses within 30 days after the earliest of the following:

i. we reach agreement with you;
ii. final judgment is rendered in a court of law;
iii. an appraisal award is filed with us; or
iv. a proof of loss is accepted by the company.

d. Appraisal

If you dispute our evaluation of the amount of the loss, then you must submit a written request for appraisal within one year of the date of loss. You and we will then each appoint and pay for a competent and disinterested appraiser. If the two appraisers cannot agree on the amount of the loss, the appraisers or a judge of the local court of record will select an umpire who will decide any differences. The expense of the umpire and all other expenses of the appraisal will be shared equally by you and us. An award in writing by any two such persons will determine the amount of your loss. You and we will be bound by that amount.

Appraisal is not available where there is a dispute as to the existence of coverage. Nothing herein will prejudice or in any way impact our right to contest coverage and to bring suit in a court of competent jurisdiction contesting coverage.

EXHIBIT 13

p. 12

e.  Protect and Recover

In the event of a covered loss to the **insured watercraft**, you must protect the **insured watercraft** from further loss and make every effort to recover it. We will pay the reasonable costs you incur under this condition in addition to any other payments we make for loss or damage under Watercraft and Equipment coverage, but not to exceed the limit for 'Watercraft and Equipment' on the Declarations Page. We will not cover any further loss incurred due to your failure to protect the **insured watercraft**.

f.  Loss Payable Conditions

If a 'Loss Payee' is named on the Declarations Page, any loss will be paid to you and the 'Loss Payee' as your and their interests appear.  If your interest in the **insured watercraft** is terminated, any loss payment will only recognize the 'Loss Payee's' interest.  No change in title or ownership of the **insured watercraft** or any acts of yours will affect the 'Loss Payee's' interest in this policy except that the 'Loss Payee's' interest will not be protected in the event of fraud, misrepresentation, material omission, or willful or intentional misconduct or criminal act on the part of any **insured** or during any illegal activity on the part of any **insured**.  These events include loss, damage, injury or liability occurring while an **insured** is operating the **insured watercraft** with a blood or breath alcohol level equal to or in excess of the legal limit applicable for the operation of motor vehicles in the state where you reside.

You or the 'Loss Payee' must let us know of any change of ownership or any increase in hazard of which you or the 'Loss Payee' are aware.

If you fail to give us sworn proof of loss within 30 days when requested by us, the 'Loss Payee' will do so within sixty (60) days thereafter.

Payment may be made to both jointly, or separately, at our discretion.

## WATERCRAFT LIABILITY

Coverage

**SPECIMEN**

We will cover damages for **bodily injury or property damage for which an insured** becomes legally liable through ownership, maintenance, or use of the **insured watercraft**.

If a premium is shown on the Declarations Page for 'Watercraft and Equipment', we will also cover the reasonable expenses incurred to raise, remove or dispose of the wreck of the **insured watercraft** if you are legally obligated to do so.  This is not additional insurance, but is included in the limit of Watercraft Liability coverage.

Wreck means the **insured watercraft** has been damaged to such an extent as to render the **insured watercraft** not navigable and we determine the **insured watercraft** to be a total or **constructive total loss**.

What We Pay

We will pay no more than the limit for 'Watercraft Liability' shown on the Declarations Page for all damages or losses resulting from any **occurrence**.  This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

Exclusions

We will not pay for:
1)  liability assumed under any contract or agreement;
2)  **bodily injury** or **property damage** while the **insured watercraft** is being transported on land;

**EXHIBIT** 13

p.13

3) any fine or penalty assessed by any governmental unit;

4) **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or **contaminant**, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, including materials to be recycled, reconditioned or reclaimed;

5) **bodily injury** or **property damage** sustained by any **insured** or **resident**;

6) damage to property in your care, custody or control;

7) **bodily injury** or **property damage** sustained by any passenger of the **insured watercraft** as a direct or indirect result of any scuba diving activity;

8) **bodily injury** or **property damage** while the **insured watercraft** is being used for teak surfing, waterskiing, aquaplaning or any similar sport in which a person(s) or object(s) or both are towed, and until such operations are ended and the person(s) or object(s) engaged in such sport have been safely taken on board the **insured watercraft** or landed safely elsewhere;

9) **bodily injury** or any other payment or obligation to any person eligible to receive any benefits required to be provided by you. This includes, but is not limited to, any employment, unemployment, disability, worker's compensation, non-occupational disability, occupational disease law, Jones Act, Federal Longshoremen's and Harbor Worker's Compensation Act, or any state or federal workers' or workmen's compensation law or occupational disease law or migrant or seasonal workers law; or

10) punitive or exemplary damages or associated interest.

**Defense**

We have the right and duty to defend any suit to which this insurance applies. However, we may investigate and settle any claim or suit at our discretion. Our duty to defend any claim or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the **occurrence** equals the limit for 'Watercraft Liability' shown on the Declarations Page.

If a suit is brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action; however, we will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

## OIL POLLUTION LIABILITY

**Coverage**

We will cover:

1) the sums which you are legally liable to pay as a result of **property damage** arising out of an **oil pollution incident**;

2) the reasonable costs directly associated with the actual clean-up of an **oil pollution incident**;

3) the reasonable costs or expenses legally imposed upon you by those government authorities assisting or monitoring an **oil pollution incident**;

4) administrative charges and civil expenses levied against you by a judiciary body as a result of an **oil pollution incident**;

5) the reasonable costs and expenses to defend you against legal action for **property damage** from an **oil pollution incident**.

**Oil pollution incident** means the sudden, accidental and unexpected emission, discharge, release, leakage, escape or spillage of a **contaminant** from an **insured watercraft** in an accident that is specific in place and time within the policy period.

**EXHIBIT** B

p. 14

## What We Pay

We will pay no more than the limit for 'Oil Pollution Liability' shown on the Declarations Page for all damages or expenses resulting from any **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

## Exclusions

We will not pay for:
1) liability assumed under any contract or agreement;
2) any fine or penalty assessed by any governmental unit;
3) an **oil pollution incident**, if any **insured** knows, or has reason to know, of the incident and fails to report it as required by law(s);
4) **property damage** sustained by any **insured** or **resident**;
5) **bodily injury**;
6) liability for natural resource damage unless legal action commences within one (1) year of the incident;
7) an **oil pollution incident** unless you provide all reasonable cooperation and assistance with containment and clean-up operations as is required by law or by someone acting under their legal authority; or
8) punitive or exemplary damages or associated interest.

## Defense

We have the right and duty to defend any suit to which this insurance applies. However, we may investigate and settle any claim or suit at our discretion. Our duty to defend any claim or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the **occurrence** equals the limit for 'Oil Pollution Liability' shown on the Declarations Page.

If a suit is brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action; however, we will not have any obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

SPECIMEN

### MEDICAL PAYMENTS

## Coverage

We will cover the reasonable charges for necessary medical, surgical, x-ray, dental, ambulance, hospital and professional nursing services and funeral service expenses incurred within one year from the date of an accident causing **bodily injury** to any person while in, upon, boarding or leaving an **insured watercraft**.

The injured person must submit to an examination by a physician selected by us when and as often as we reasonably require.

## What We Pay

We will pay no more than the limit for 'Medical Payments' shown on the Declarations Page for any **occurrence**. This is the most we will pay, regardless of the number of persons involved, claims made, or watercraft or premiums shown on the Declarations Page, or the number of watercraft involved.

Each person seeking payment under this coverage must:
1)  provide us with written authorization for release to us copies of pertinent medical reports and records; and
2)  submit a valid proof of loss within one year of the incurred expenses.

Exclusions

Payments under this section will not be made to, or on behalf of, any person:
1)  injured while trespassing;
2)  for whom liability is assumed by an **insured** under contract or agreement;
3)  injured while the **insured watercraft** is being transported on land;
4)  hired to work for or on behalf of any **insured**; or
5)  **bodily injury** or any other payment or obligation to any person eligible to receive any benefits required to be provided by an **insured**.  This includes, but is not limited to, any employment, unemployment, disability, worker's compensation, non-occupational disability, occupational disease law, Jones Act, Federal Longshoremen's and Harbor Worker's Compensation Act, or any state or federal workers' or workmen's compensation law or occupational disease law or migrant or seasonal workers law.

Admission of Liability

Any payment made under this section is not an admission of liability by you or us.

## UNINSURED WATERCRAFT

Coverage

SPECIMEN

We will pay all sums you or a **family member** are legally entitled to recover as damages from the owner or operator of an **uninsured watercraft**.  The damages must result from **bodily injury** caused by an **occurrence**, sustained by you or a **family member** while on board the **insured watercraft**.  The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the **uninsured watercraft**.

The injured person must submit to an examination by a physician selected by us when and as often as we reasonably require.

**Uninsured watercraft** means a waterborne vehicle of any type:
1)  To which no **bodily injury** bond or policy applies at the time of the **occurrence**.
2)  Which is a watercraft whose operator or owner cannot be identified and which hits:
    a)  you or a **family member** while on board the **insured watercraft**; or
    b)  an **insured watercraft**.

An **uninsured watercraft** does not include any watercraft or equipment:
1)  owned, operated by, or available for the regular use of an **insured** or a **resident**; or
2)  owned by any governmental unit or agency.

What We Pay

We will pay no more than the limit for 'Uninsured Watercraft' shown on the Declarations Page for all damages or losses resulting from any **occurrence**.  This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or the number of watercraft involved.

Any amount payable under this coverage will be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under **MEDICAL PAYMENTS**.  Any sums paid under this coverage will reduce any amount you or a **family member** are entitled to recover under **MEDICAL PAYMENTS**.

Each person seeking payment under this coverage must:
1) provide us with written authorization for release to us copies of pertinent medical reports and records; and
2) submit a valid proof of loss within one year of the incurred medical or funeral expense.

Exclusions

We will not pay for:
1) any claim settled without our consent;
2) **bodily injury** to any person on board the **insured watercraft** without permission;
3) the benefit of any insurer or self-insurer, directly or indirectly, under any workers' compensation, disability benefits law or any similar law;
4) damages where there is no evidence of physical contact between the **insured watercraft** and either an unidentified or **uninsured watercraft**; or
5) **bodily injury** to any person arising out of the transportation of an **uninsured watercraft** on land.

This Policy is signed at the Home Office of the company by its president and secretary.

**MARKEL AMERICAN INSURANCE COMPANY**
Glen Allen, Virginia

SPECIMEN

Linda Rotz
Secretary

T. Tamraz Grove
President

**Administrative Office:**
P.O. Box 906
Pewaukee, WI  53072-0906
800-236-2862

EXHIBIT B

P.17

 **MARKEL AMERICAN INSURANCE COMPANY**

MARKEL

---

## CONSUMER NOTICE OF INSURANCE SCORING

To offer an accurate quote in connection with this application for insurance, we will review the unit owner's credit report or obtain or use a credit-based insurance score based on the information contained in that credit report. We may use a third party in connection with the development of the unit owner's insurance score. Future reports may be used to update or renew insurance.

MAM5120-0407

**Page 1 of 1**

EXHIBIT B

p. 18

 **MARKEL AMERICAN INSURANCE COMPANY**

MARKEL

---

## PRIVACY POLICY

---

We would like to thank you for your business and let you know we respect your privacy. We are committed to protecting your personal information. Please read this notice, which outlines our privacy policies and practices.

We collect nonpublic information about you from the following sources:
- Information we receive from you on applications or other forms such as your name and address;
- Information about your transactions with us, our affiliates, or others;
- Information we receive from a consumer reporting agency.

**We do not disclose any nonpublic information about our customers or former customers to anyone, except as permitted by law.**

We may disclose nonpublic personal information about you to the following types of third parties:
- Insurance agents and/or brokers that you have chosen to work with;
- Non-affiliated third parties as permitted by law to provide services you have requested.

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide services to you. We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

*MHP00000016262*

GLB2-0505

**EXHIBIT** B

p. 19

 **MARKEL AMERICAN INSURANCE COMPANY**

---

## ULTRA HIGH PERFORMANCE ENDORSEMENT

---

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel High Performance Policy is amended as follows:

**GENERAL CONDITIONS,** 1. Use of the **Insured Watercraft**, item b. is deleted in its entirety and replaced with the following restriction on the use of the **insured watercraft**:

    b.  The **insured watercraft** may not be transported overland more than 200 miles from the 'Unit Mooring Location' shown on the Declarations Page, whether on a trailer or while being transported by contract or common carrier. The **insured watercraft** may not be transported outside of the Continental United States. While being towed overland on a trailer, the weight of the **insured watercraft**, trailer and any other equipment may not exceed the towing capacity as provided by the manufacturer of the towing vehicle. If the **insured watercraft** is being transported by contract or common carrier, the contract or common carrier must be licensed and must provide a certificate of insurance covering the **insured watercraft**. This policy is then excess to the coverage provided by the licensed contract or common carrier. Coverage is not provided anytime the **insured watercraft** is being transported as waterborne cargo.

**GENERAL CONDITIONS,** item 1. Use of the **Insured Watercraft** is amended by adding the following restrictions on the use of the **insured watercraft**:

- The **insured watercraft** must be equipped with manual and automatic fire suppression equipment, which must be maintained on a yearly basis.
- The **insured watercraft** must be equipped with a kill lanyard, which must be clipped to the **named operator** while underway.
- All occupants of the **insured watercraft** must wear a U.S. Coast Guard approved flotation device while underway.
- The **insured watercraft** must not be left unattended while using a mooring buoy or anchor.

**PHYSICAL DAMAGE,** 1. Coverage, a. Watercraft and Equipment, iii. What We Pay, item 1) is deleted in its entirety and replaced with the following:

    1)  In the event of a total loss or **constructive total loss** at our option we will:
        a)  pay the lesser of:
            i)  the limit on the Declarations Page for 'Watercraft and Equipment'; or
            ii)  if the **insured watercraft** is advertised for sale at any time during the policy period, the advertised sale price; or
            iii)  the most recent survey valuation
            less the applicable deductible; or
        b)  replace the lost property with property of like kind and quality, less the applicable deductible.

**PHYSICAL DAMAGE,** 2. Loss Conditions, item a. Deductibles is amended by adding the following:

    The applicable deductible will be doubled for loss or damage to engines, drives and attached machinery caused by collision with another object, except another vessel.

All other terms, conditions, and limitations of the policy remain unchanged.

**EXHIBIT B**

*p. 20*



# MARKEL AMERICAN INSURANCE COMPANY

MARKEL

---

## FLORIDA AMENDATORY ENDORSEMENT

---

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel High Performance Policy is amended as follows:

**GENERAL CONDITIONS, 4.** Notice of Cancellation is deleted in its entirety and replaced with the following:

4.  Notice of Cancellation
    You may cancel this policy by returning it to us or our authorized agent, or by advising us or our authorized agent in writing, stating the future date you want the policy to be cancelled.

    We may cancel this policy by delivering or mailing notice of cancellation to the first named 'Insured' at the last address shown in our records at least:
    a.  ten (10) days before the cancellation takes effect if the cancellation is for nonpayment of premium;
    b.  twenty (20) days before the cancellation takes effect in all other cases if this policy has been in effect for less than ninety (90) days and is not a renewal policy; or
    c.  forty-five (45) days before the cancellation takes effect in all other cases.

    After this policy has been in effect for ninety (90) days, or if this is a renewal policy, we will cancel only:
    a.  for nonpayment of premium due;
    b.  for misrepresentation or fraud;
    c.  for substantial breach of your duties under this policy;
    d.  if the risk changed substantially since the policy was issued; or
    e.  for failure to comply with our underwriting requirements within 90 days of the term effective date.

    Proof of mailing of this notice to you will be sufficient proof that notice of cancellation was given. The date of the cancellation stated in the notice will become the end of the policy period.

    This policy will terminate without any written notice and all premiums will be deemed fully earned by us when we pay for a total loss or a **constructive total loss**.

**GENERAL CONDITIONS, 8.** Legal Action Against Us, item b. is deleted in its entirety and replaced with the following:

b.  With respect to coverage provided under **PHYSICAL DAMAGE**, no suit or action may be brought against us unless the action is brought within 5 years after the date you first have knowledge of the loss.

SPECIMEN

EXHIBIT B

p. 21

## FLORIDA AMENDATORY ENDORSEMENT

**GENERAL CONDITIONS,** item 15. Nonrenewal is deleted in its entirety and replaced with the following:

15. Nonrenewal

SPECIMEN

   If we decide not to renew your policy, we or our authorized representative will mail to the first named 'Insured', at the address shown on the Declarations Page, written notice of nonrenewal.  The written notice will be mailed to the first named 'Insured' at least forty-five (45) days before the end of the policy term.  A copy of the notice will also be sent to any lienholder named on the Declarations Page. If we decide not to renew your policy, our mailing of notice to the address of the first named 'Insured' shown on the Declarations Page will constitute proof of notice as of the date we mail it.

**GENERAL EXCLUSIONS,** item 4. is deleted in its entirety:

All other terms, conditions, and limitations of the policy remain unchanged.

MHP5021-0108

EXHIBIT B

p. 22



# MARKEL AMERICAN INSURANCE COMPANY

## WINDSTORM EXCLUSION ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that The Markel High Performance Policy is amended as follows:

THIS ENDORSEMENT SUPERSEDES AND CONTROLS OVER ALL OTHER ENDORSEMENTS, POLICY LANGUAGE AND PROVISIONS WITH RESPECT TO **WINDSTORM** DAMAGE, **WINDSTORM** COVERAGE AND **WINDSTORM** DEDUCTIBLE.

**PHYSICAL DAMAGE**, 1. Coverage, a. Watercraft and Equipment, iii. What We Pay, item 2)f) is deleted in its entirety.

**PHYSICAL DAMAGE**, 1. Coverage, a. Watercraft and Equipment, iv. Exclusions, item 8) is deleted in its entirety and replaced with the following:

    8)   **windstorm**; or

SPECIMEN

**PHYSICAL DAMAGE**, 1. Coverage, c. Trailer, iii. Exclusions is amended by adding the following item:

    We shall not pay for loss, damage or expense caused by or resulting from any **windstorm**.

**PHYSICAL DAMAGE**, 1. Coverage, item e. Windstorm Extra Expense is deleted in its entirety.

**PHYSICAL DAMAGE**, 2. Loss Conditions, a. Deductibles, items iii. and iv. are deleted in their entirety.

All other terms, conditions, and limitations of the policy remain unchanged.

EXHIBIT B

p.23

**Exhibit C**



Claims Service Center
P.O. Box 906
Pewaukee, WI 53072-0906

(262) 548-9880
(800) 236-3113
www.markelcorp.com

October 16, 2009

## RESERVATION OF RIGHTS LETTER

| | | | |
|---|---|---|---|
| Insured: | Teodoro Obiang | Company: | Markel American Insurance |
| | 3620 Sweetwater Mesa Rd | Policy #: | MHP 16262 |
| | Malibu, CA 90265-4939 | Claim #: | 09C2467 |
| | | Date of Loss: | 10/15/09 |

Markel Service, Incorporated, is claims service manager for Markel American Insurance Company.

This Reservation of Rights Letter refers to the above captioned insured, company and occurrence. Your policy contains a General Condition which states "1. Use of the Insured Watercraft, If you violate any of the following conditions, coverage will be suspended until you are no longer in violation: b. The Insured Watercraft may not be transported overland more than 200 miles from the 'Unit Mooring Location' shown on the Declarations Page, whether on a trailer or while being transported by contract or common carrier. The insured watercraft may not be transported outside of the Continental United States...."

The General Conditions portion of your policy also states "2. Policy Period/Territory, This policy applies only to loss which occurs during the policy period as shown on the Declarations Page and: a. on land within the United States of America; or b. while the insured watercraft is afloat within the 'Navigation Limits' shown on the Declarations Page. Your policy Declaration Page states that the Navigation Limits are "U.S. Atlantic and Gulf of Mexico off-shore up to 25 miles and inland waters between Jacksonville, FL and Pensacola, FL."

For the reasons stated above, as well as other possible reasons not specifically mentioned here, the investigation and/or defense of this matter will be conducted under the following provisions:

1 - No action taken or information received, before or after the date of this Letter will change in any way the liability or requirements of the insurance policy. This action will not prejudice or affect the rights of either party regarding the loss, damage or injury, at the time of loss.

2- The rights of each party will be exactly the same as at the time of loss, damage or injury.

3 - The Company is permitted to investigate all legal defenses for the amount of the claim or suit. This will be done in a matter which avoids unnecessary delay without affecting the liability or non-liability of the Company. The execution of this Letter will not affect any rights you had under the Company's policy at the time of the loss, damage or injury.

4 - Nothing in this Letter will require any investigation or defense by the Company. Nothing in this Letter will prevent the policyholder from making an independent investigation on his own or choosing an attorney on his behalf at his expense to represent him in any litigation which results from the alleged loss, claim, damage or injury.

# EXHIBIT C

p.1



5 - This Letter is being executed as a result of the loss, damage or injury which took place before, on or about October 15th, 2009, as captioned above.

Sincerely,

Casey Matthews, AMIM
Supervisor, Claims


**Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony or the third degree.**

**For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in the state prison.**


EXHIBIT C

p. 2

Exhibit D



**S A N D S**

**L E R N E R**

PROFESSIONAL CORPORATION

Neil S. Lerner
nsl@sandslerner.com

June 8, 2010

Teodoro Obiang
% Nancy Gomez
3620 Sweetwater Mesa Rd
Malibu, CA  90265-4939

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Re:   Insurance Claim Re Your Vessel:  50′ 2006 Nor-Tech Super Cat
      Claim No.     :   09C2467
      Policy No.    :   MHP 16262
      Date of Loss  :   10-15-09
      Our File No.  :   21524

Dear Mr. Obiang:

Enclosed please find a letter from Casey Matthews, Claims Supervisor for Markel American
Insurance Company, denying your claim for benefits under the above-referenced policy for
the stated reasons.

Very truly yours,

SANDS LERNER

Neil S. Lerner

NSL:JRR:rel

EXHIBIT D



Claims Service Center
P.O. Box 906
Pewaukee, WI 53072-0906

(262) 548-9880
(800) 236-3113
www.markelcorp.com

**MARKEL®**

June 8, 2010


Teodoro Obiang
3620 Sweetwater Mesa Road
Malibu, California 90265-4939


Re:   Incident:       Partial Submersion of Vessel
      Claim No.:      09C2467
      Policy No.:     MHP16262
      Date of Loss:   10-15-09
      Vessel:         50' 2006 Nor-Tech Super Cat
      HIN:            AOV490118A606


Dear Mr. Obiang:

We have terminated (but not completed) our investigation into this loss and write today to advise you that we are denying your claim, and to inform you of the reasons for the denial.

On October 16, 2009, we notified you in writing, in our Reservation of Rights Letter, a copy of which is enclosed herewith, of concerns regarding your claim and of the conditions under which an investigation would be undertaken. Our investigation has been severely impaired by your failure to cooperate and submit to an examination under oath though one was often requested by our counsel.

Under the General Conditions, number 13, on page 4 of the Markel Marine Insurance Policy ("the policy") for the vessel, you are obligated to submit to such an examination as often as reasonably required. Without an examination under oath, our investigation into your claimed loss cannot be completed. Compliance with that policy requirement is a <u>prerequisite</u> to any rights you have to receive benefits under the policy. Since you have failed to submit to such an examination, and thus to fulfill a condition precedent to coverage, no benefits are due under the policy. Accordingly, your claim must be denied.

In addition, it appears from the facts gathered thus far, that you violated several warranties under the policy. These violations operate to suspend coverage during the time of the loss. They are the navigational limits and named operator warranties. Those warranties are included in the policy for the purpose of limiting

**EXHIBIT** D

p. 2



**MARKEL**®

Teodoro Obiang
Re:  Claim Number 09C2467
May 24th, 2010
Page 2

and defining the risk and are therefore material to the risk.  Before insuring a vessel, it is important for us to know upon what waters the vessel will be navigated and by whom the vessel will be operated.  Since the warranties are essential to the insurance contract, your compliance with them is an absolute requirement.

The Ultra High Performance Endorsement to the policy required that the vessel not be transported outside the Continental United States.   General Condition number 1b., on page 2, states that "If you violate any of the following conditions, coverage will be suspended until you are no longer in violation….1b) The vessel may not be transported outside the continental United States…" (emphasis added).  In addition, General Condition number 2, on page 2, required the vessel only be operated within the navigational limits identified in the Declarations Page: namely, the "U.S. Atlantic and Gulf of Mexico off-shore up to 25 miles and inland waters between Jacksonville, Florida and Pensacola, Florida."

Our investigation has established that you breached both the General Condition and the navigational limits warranty by transporting the vessel outside the Continental United States to Hawaii and by operating it on the Pacific Ocean off the coast of Kihei, Hawaii.  Since you violated these navigational limits condition and warranty by doing so, there is no coverage under the policy as the policy is deemed suspended at the time of the loss.

In addition, under General Conditions, number 1b. on page 2, it states that "Coverage is not provided anytime the insured watercraft is being transported as waterborne cargo."   We understand that the vessel was transported to Hawaii via Matson Line ship.  At the completion of this transport, while being unloaded, the vessel and trailer rolled into and struck several steel pipes filled with concrete causing extensive damage to the back end.  While the cause of submersion is undetermined, it is possible and indeed likely that this damage upon unloading from the Matson Line ship may have contributed to the subsequent water ingress which forms the basis of the current claim.   Your breach of that warranty precludes coverage for your claim as the policy is deemed suspended at the time of the loss.

**EXHIBIT** O

23



**MARKEL®**

Teodoro Obiang
Re: Claim Number 09C2467
May 24th, 2010
Page 3

Furthermore, under General Conditions, number 1c., on page 2, only named operators are to operate the vessel. The policy defines "named operator" as "the 'Named Operator' whom we have approved and listed on the Declarations Page." The Declarations Page identifies the named operators as "Brad Schoenwald, Andrew Howard, and Ron McClean." Nevertheless, our investigation has established that, at or around the time of the loss, the vessel was under your operation as well as that of another individual, Mark Runyan, neither of which are named operators. These were violations of the named operator warranty.[1] Your breach of that warranty precludes coverage for your claim as the policy is deemed suspended at the time of the loss.

Additionally, on November 20th, 2008, you signed a form acknowledging, inter alia, that "8. Insured vessel cannot be left unattended for a period of time greater than (12) hours while afloat, and then only while tied to a pier in a secure marina". Further, this same signed acknowledgement states that "10. Insured vessel cannot be kept on a mooring at any time.: Per these items, the vessel may only be left unattended (within the acceptable 12 hour period) while tied to a pier, and may never be tied to a mooring. Our inspection has revealed that upon completion of your and Mr. Runyan's operation of the vessel, the vessel was tied to a mooring ball, which was where it was at the time of the submersion. This constitutes a violation of both of these warranties, and these violations were in effect as of the time of loss. Your breach of these warranties precludes coverage for your claim as the policy is deemed suspended at the time of the loss.

If you believe we are mistaken in our analysis, then please provide us with the information supporting your belief and, if necessary, we will reconsider our position. If you have additional facts or evidence that you believe we have either overlooked or not considered, and that you believe would change the outcome of the coverage issues set forth herein, then please send us the information and, if necessary, we will reconsider our position.

Finally, you have the right to have this matter reviewed by the California Department of Insurance ("DOI"). The contact information for the DOI is as follows:

---

[1] The facts also show that the vessel took on water during Mr. Runyan's operation of it.

**EXHIBIT** D

p.4



**MARKEL**®

Teodoro Obiang
Re:  Claim Number 09C2467
May 24th, 2010
Page 4

(800) 927-HELP or (213) 897-8921
TDD: (800) 482-4tdd

California Department of Insurance
Consumer Services Division
300 South Spring Street
Los Angeles, CA 90013

The DOI can also accept complaints over its website at
www.927help@insurance.ca.gov

Very truly yours,

Casey Matthews, AMIM
Supervisor, Claims

213

For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in the state prison.

**EXHIBIT** D

25

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Ronald S. W. Lew and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

### CV10- 4261 RSWL (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

COPY

Name & Address:
Neil S. Lerner (SBN 134031)
Jolene R. Rice (SBN 237180)
SANDS LERNER
12400 Wilshire Blvd., Ste. 1300
Los Angeles, CA 90025

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY, | CASE NUMBER |
| PLAINTIFF(S) | CV10 4261-ℓSUℓ(Eℓ) |
| v. | |
| TEODORO NGUEMA OBIANG MANGUE, | **SUMMONS** |
| DEFENDANT(S). | |

TO:   DEFENDANT(S): TEODORO NGUEMA OBIANG MANGUE

       A lawsuit has been filed against you.

       Within __21__ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer
or motion must be served on the plaintiff's attorney, Neil S. Lerner _____, whose address is
12400 Wilshire Blvd., Ste. 1300, Los Angeles, CA 90025 _____. If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint.  You also must file
your answer or motion with the court.


                                                    Clerk, U.S. District Court


Dated: __9 JUN 2010__                    By: _____MARILYN DAVIS_____
                                                    Deputy Clerk

                                                    (Seal of the Court)


*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed
60 days by Rule 12(a)(3)].*

CV-01A (12/07)                              **SUMMONS**

COPY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY | TEODORO NGUEMA OBIANG MANGUE |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>SANDS LERNER<br>12400 Wilshire Blvd., Ste. 1300, Los Angeles, CA 90025<br>(310) 979-9144 | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** Declaratory Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Action for voiding, rescission, and declaratory relief re: a marine insurance policy within the admiralty and maritime jurisdiction of this Court under 28 U.S.C. §1333.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☑ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: _____ CV10 4261 _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Wisconsin |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date   JUNE 8, 2010

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |